Thank you, Your Honor. Robert Greene on behalf of the Appellant and Plaintiff below Lupin Atlantis Holdings, and we appreciate the Court putting this time aside on Friday afternoon for us. There's only one issue to be determined by this Court, and that is whether the District Court erred in finding on summary judgment that the alleged infringing product having a mass ratio of 4.6 to 1 did not infringe a claim which required at the lower limit a mass ratio of 5 to 1. Mylan, the defendant below in this case, had one primary argument that it used, and that is that by using the term between in the range of 5 to 1 to 15 to 1, it took on some type of special significance. I submit that if you look at the cases... Sorry to interrupt, but it seems that... I don't disagree necessarily if that was their primary argument, but your primary argument was that between 5 and 15 has one and only one meaning, and that is the ordinary meaning, and that is that each of those numbers covers a range, right? ROBERT GREENE It covers the range that's attributed through the scientific principle recognized by this Court around me. So to that extent, I would agree with you, Your Honor. LAUREN ZALAZNICK So why is that a factual issue of infringement and not a claim construction? ROBERT GREENE I believe the issue initially, if raised during a Markman claim construction, would be one of claim construction. If the challenger to that raised it during the lower court's proceeding, the Markman proceeding, the presumption in this case is what we learned back in grade school. That is, rounding applies. It's a standard... LAUREN ZALAZNICK You're saying, hands down, if he says ordinary meaning or if there's no construction, hands down, there's no question and no equivocation that 5 means 4.5 whatever to 5.4. ROBERT GREENE I would agree with that, Your Honor. There is no equivocation at all as a starting point if one wants to raise the issue as to whether that presumption of that range should not apply in a given case. And for example, the VizCase case is a very good case to point to on that. In that issue, there was a range of 0.91. The question was, did it extend beyond that to encompass a product that had a range beyond 0.91? And the question became, well, is there another significant digit in that case that would preclude rounding? And this court looked to the file history on that and found in the file history that, in fact, although the claim limit was 0.91, the issue had been raised during prosecution and the argument was made during prosecution that, in fact, the prior argument was distinguished not because of 0.91 but because of 0.910. So in that instance, the presumption of rounding, in fact, is rebutted. JANET RANKIN But you also had the about language in that case. ROBERT GREENE Oh, indeed. But I think it's also rather clear, Your Honor, that if you read the decision, the decision on that point sets aside the issue of about and focuses on the sole question of rounding. JANET RANKIN That did that case have between? Is that about between, or it didn't say between at all? ROBERT GREENE It did not. In fact, from the standpoint of between, there are really only four cases. The way I see the record here, that's the Electa case, Atlantic, excuse me, Glasses, Alternatives, U.S. Phillips, and the generic Penton case, which is referred to as Dillon by the District Court. Those are the four cases that deal with the issue of between. JANET RANKIN Let me go back for a minute to the point that Judge Prost was pursuing at first, and that is how this question gets presented. It's amazing how many times people come in here, and they both said to the District Court, plain and ordinary meaning, and then they come here and dispute what plain and ordinary meaning means. Now, you're saying if they wanted to in any way rebut this presumption that you say is a mathematical given, that there's rounding, or that integer, I guess, has a vague meaning or an indefinite meaning, but you're saying that if there's any way they wanted to rebut that, that they should have raised that at claim construction. I'm sure you noticed in their brief, they say if you actually wanted the endpoints to be construed, that you should have asked for that at claim construction. Are you saying they knew full well as of the claim construction hearing that you intended to make this argument that Your Honor, I don't think there could be any question about that. There was a charge of infringement on that claim. They knew what their product was. They knew that if you look at the total composition of the phenotype rate in the HPMC, that their ratio, based on their math, would be 4.7. What did you know about what the District Court said? I mean, when the District Court says the ordinary meaning to mean must be between 5 and 15, so you really were certain at that point there was no ambiguity. You were certain that he meant by that the entire range of rocks. Exactly, Your Honor. There was no exclusion because there was no issue raised that would rebut the presumption, if you will, that we, again, we all learned in grade school that this is a scientific principle, which has been recognized by this Court. In this case, exactly. Well, let me turn to you then for that question. I mean, you tell us here that we've all learned it in grade school, and so what's the significance of this particular number and where it stands. But the only evidence of records that we have with regard to that point on your side is the deposition of this Dr. Clyde Cleaver. And the other side's response to that is that this is conclusory. And it seems to me, without showing us anything, I mean, you can stand here and tell us we've all learned it since grade school, but I'm not sure I would consider that mathematical statistics, the law of mathematics rounding, the laws of statistics. Do you think that's sufficient because that's just a given and we all learned it at grade school? In that instance, Your Honor, he was addressing the more specific question not addressed by anyone on the side of my land. And that was, once you put into context the question of the five-to-one ratio in that claim, would there have been, from the standpoint of a person of ordinary skill, would there have been a rounding in that case? And that's what he specifically addressed. There's no testimony at all from the standpoint of my land on that issue. So, if this Court requires that in the context of a rounding question, that there needs to be testimony as to whether a person of ordinary skill in the art, in fact, would round, we have it. They don't. There's no... Counsel, when you look at every example regarding mass in the to one decimal point, 64.5, 11.2, 3.3. So, every single example throughout the specification carries it out to a tenth. So, why wouldn't one of skill in the art look at five-to-one and assume it's 5.0 to one and 15.0 to one? And I think that's a good question, Your Honor. What it points out is that the applicant certainly knew that when it was required, for example, to distinguish over the stamp prior art, that one could have chosen a more precise term. Well, actually, no. So, let's look at those examples. Columns three, lines 60 to 65, you've got these numbers, right? When you add them up, there are 100. Well, look, 64.5, 21. Not 21.0, just 21. But guess what? When you add up all the other tenths, it is 21.0. Same thing in other places in the specification. It seems to me that what I learned by reading the specification is when the inventor wanted, like look on the example two on column six, 71, 21.5, 5, and 2.5. Obviously, you know, the others are .0. So, it seems to me when it was a .0, he just left off the .0 because why would you have a number with including a decimal point tenths and then have another measurement number also on math and not include it to the tenths? And when you add it backwards, it's .0. So, why don't we just assume he did the same thing in the claims itself? When it was 5.0, he just left off the .0. That's completely consistent with what he did throughout that. I would argue, Your Honor, that in fact, if you look, for example, at the testimony from the inventors relied upon by Mylan, what they did was they went through and they did that mathematical calculation. And that mathematical calculation was to two decimal points because that was the data that was presented in example three to two decimal points. And anyone skilled in the art that wanted to look at that example three to determine that ratio indeed could have done the same thing. But the recognition then is that that degree of specificity is not present in the ratio. The specification is clear on that point. The specification when it talks about the ratio doesn't talk about 5.0. It talks about 5, recognizing that that specificity that could have been there was not present. So, I would submit, Your Honor, that in fact, the fact that the inventor was able to achieve a number with two decimal points, points away from any attempt to put more specificity in the claimed ratio of five to one. I guess maybe you misunderstand what I'm saying. In these examples where he carries everything out to a tenth, whenever it is .0, he doesn't bother listing the .0. It makes no sense to do a bunch of weight analysis to the tenth but then one of the elements not carried out to the tenth, carry it only to the one's place. Clearly, it's .0. When you add up the numbers, it's .0. So, why isn't this just a matter of whenever he meant .0, he didn't include this? Am I missing something? Why wouldn't one of skilled in the art read this and say, aha, the inventor carried these math calculations out to the tenth except when it came to exactly zero in which he just left off the .0? And again, I apologize, Your Honor, but can you point to me exactly where you indicate this is happening? Example one on the bottom of A85. Again, Your Honor, I'm not sure where you're addressing my attention. Column 574, Patent, Column 3, Lines 60 to 65, the table that's shown. At line 60. Well, it's the table that appears between line 60 and 65. All right. Again, focusing on the table, Your Honor, I apologize for this, but I'm not quite understanding the question that you're asking. So, if you could just repeat it one more time. 21 is obviously 21.0, right? For the neutral microgranule percentage by mass? Because all of those numbers, 64.5, 21, 11.2, and 3.3 have to add up to 100%. So, 21 is obviously 21.0, right? It would appear to be the case. Yeah. So, obviously, every single one of these goes to a tenth. So, obviously, that was the level of significance of the weight. 21 has to be 21.0. So, I wouldn't want a skill in the art reading this say when the inventor meant 5.0, he just said 5. Because that's what he does everywhere, where that numbers add up to 100. And one of them, like in this instance, and it's clearly 21.0. It has to be. All the other numbers add up to that. Yes, Your Honor. That particular number is a mass per neutral microgranule. The two numbers that we're dealing with is the amount of three significant figures. Yeah, but the argument you're making is between the law or the principles of rounding, not because of the particular compounds we have here. So, I don't understand how that responds to Judge Moore's point. In this chart, does that, I guess, just to repeat, does the 21 there mean 21.0? Well, it means 21. There is no .0 after that. Well, no, but it has to mean that, right? Because the numbers won't add up to 100, and this is a percentage. So, it has to add up to 100. So, it can't be 20.56. It can't be 21.49. Because those numbers would not add up to 100 then. In this table, if it's not a .0, it would not add up to 100. Yes, I agree with that. But again, the ratio we're talking about is the ratio between a phenol fibrate and the HPMC, which is set forth with this degree of specificity. And there's a reason for that. And the whole issue before this court is whether when you're dealing with the ratio of those two ingredients, that when it's specified in the claim, it's being religious. But I thought the expert and the argument you were using to persuade us that five means some range had nothing to do with the specific compounds, what we were talking about in this patent. It has to do with the so-called law of mathematics or law of rounding. That doesn't, right? So, that wouldn't vary. It would not vary. I agree with that. Can I ask, what would you, how would you construe if this, the language at issue here said between about 5.1 to 5.15.1, how would you construe then, what would you say the ordinary meaning of five is in that context? It does not change. There is no case that says that by using the phrase between, it changes. No, I'm talking about, I'm answering the word about. If the word about appeared there, how would you construe the range? If the word about appears, then more than rounding, I would say is contemplated by that. Rounding is inherent. The use of the term about gives it greater breadth. And I think this court has recognized that principle before, that about gives a range. It's not the inherent range of rounding. It's the range that goes along with the use of the term about. In fact, this case is remanded for consideration by the district court, the application of the term about, which would have been necessary had it not been an issue of construction below from the standpoint of the issue of infringement. Let me talk to you about a few other things that the district court pointed to. And I admit that when you're talking about summary judgment, it's a little odd that the court uses claim construction principles to analyze the infringement because the court talks about what was given up, for instance, in the prosecution history. And the court looks to some basic construction principles as to terms that were apparently never construed, or at least endpoints that were never construed. But the district court makes a good point when he says, if I accept your rounding principle, then how can I conclude? That means it has to apply across the board because you're saying it's a basic mathematical principle. So that means that the prior art, the STAM prior art, a 4, 1 to 4 would mean 1 to 4.49. And if you round all the way down to 4.51, how can you claim that those are significantly different ranges, which is exactly what you said in your prosecution? Let me address the issue this way, Your Honor. The STAM patent teaches a range from 1 to 10, not 10 to 1, but 1 to 10, to 4 to 1. The claim range is 5 to 1. There is nothing in the prior art that motivates one to change from the value of 4. Even if one were to round the STAM patent, there is still a difference between the STAM patent and the claimed invention. One hundredth of a point, or one hundredth of a point? And, Your Honor, that's the exact issue that was remanded in this case situation, where there was a question between the amount that was claimed and what the prior art range would be. And that applies in this case as well. A question of obviousness requires, among other things, motivation. I mean, now we're looking at claim construction, of course, in the context of patentability. But, again, there is nothing in STAM that says, do something that's totally outside of that range. And that's exactly what you're doing if you were to go one microgram above that rounded range. Well, I think Judge O'Malley pointed out that there's a difference. I mean, she acknowledged, whatever, a small percentage. But you characterize the difference between this and STAM as being substantially greater. So it's not just that I don't think we were suggesting the two overlap, but substantially greater, really? Again, there is some confusion in the record, I believe, as to the arguments used during prosecution as to whether the argument relates to the issue of the ratio or whether that, in fact, goes to the total amount of... Well, I don't know. Why don't we look at A1849? Because maybe I'm misreading it, but there's a sentence there that says the claimed invention is just this dust wand where the ratio is substantially greater, reflecting lower than those of STAM. So I don't... I mean, there is other stuff there that I think you may have pointed to that there was arguably a little confusion, but I'm not sure that I see any confusion in this particular sentence. You're right in that particular sentence, Your Honor. My point was to the reliance that Mylan has placed on the arguments made during prosecution about the abutting language, and that abutting language... Not what you said, just substantially greater. No, I agree. That is correct. So the abutting language goes to the composition. It certainly does. But this language does not. I agree. It does not. But you think that that is a significant difference? Do I understand your argument to say as long as there's no overlap, the difference is by definition significant? It's totally contrary, Your Honor, to the teaching of the STAM patent. STAM teaches one to ten to four to one. And this Court has recognized minute differences between claimed ranges in patents that have issued and the prior art because, among other things, one is allowed to draw a bright line between what's in the prior art and what's claimed. And what's claimed in this invention is a range, and it does begin at the bottom of the range with five to one. But that is a range that cannot be found in the prior art and certainly cannot be derived from any teaching in STAM. Well, it's not five to one. If we accept your argument, it's 4.51 and higher. And technically, if we accept your argument, as Judge Prost pointed out, STAM covers 4.49 and you go to 4.51, right? I mean, under mathematical principles, that's the way you're telling us to interpret the difference between STAM and yours, the difference between 4.49 to one and 4.51 to one. You're claiming a significant difference. It's a significant difference because it's not taught nor is it motivated in the prior art. And indeed, it's significant from that standpoint. Well, the word isn't even just a significant distinction. It's substantially greater. To me, that's a little even worse for you. But we're way over your time. So we'll restore three minutes of rebuttal and to even things out, we'll add to Mr. Wallace's time another seven minutes if you need it. Thank you. Good afternoon. Thank you, Ernest. First, let me respond to a comment by Judge O'Malley about the context in which it sort of smelled a little bit like claim construction in summary judgment. And first, I would ask that the court, in its consideration, consider not only the opening brief, but he also wrote a second opinion about a week later, where this issue was even more highly focused, his January 7 opinion. That is in the appendix. Yes, Your Honor. That is toward the end of A2668. And I'm not suggesting that this deprives the court of its de novo responsibilities, but I think it's a good roadmap for this court's consideration. Well, what about your friend's comments about whose burden it was to raise this to the extent there was a claim construction issue, and his argument that there was a presumption on his side, so the burden fell on you all if you wanted an alternative claim construction. Firstly, is there any suggestion that the district court obviously didn't see it that way, but what do you say? Well, we say my friend Bob Green is wrong. It was never suggested at the Markman hearing that five meant anything other than five. Well, he says, I think, if I understand his argument, that there's just a presumption in the law of rounding that all of us learned in grade school, that when you see the number five, it Well, with all respect to Professor Klibanoff, who we all know quite well, because he's in a lot of these patent cases, he's a brilliant mathematician and scientist. And as a general rule, what he said about rounding in the abstract and conclusory fashion is probably close to correct. I take it you knew that that was his view based on his expert report and his My recollection is Markman was after, I'm not sure about the time sequence on that, it's a good point. But here's the point on rounding. This court's opinions, and I think the two key opinions for this case are the U.S. Phillips case and the Vizcos case, two cases cited by Mr. Green. And Phillips recognized that one, all by itself, is perhaps more ambiguous than 1.0. And the court in Phillips, as the court in Vizcos, recognized that some rounding in appropriate context might be considered. In appropriate context. Well, I think more than that, didn't the court say that that more likely is norm unless there's very clear indication that it was not intended? Isn't that more what Phillips said? I think that's probably correct, Your Honor. As I understand it, you're conceding that the reason you didn't have expert testimony, is that if you're talking about it as an abstract mathematical principle, that principle is correct. I think that principle is probably correct, yes, Your Honor. We're not quarreling with that principle. We're saying that... Am I misremembering it? I, for some reason, have it in my head that in Phillips, the rounding argument was deemed waived. Am I misremembering that? I think they said they were going to leave to another day. It had to be something else. So I don't see how you can use Phillips, and I think it was because it was waived. If you look back, they suggest that it was waived. So I'm not sure how Phillips helped you, i.e., you don't round in a situation like that when, in fact, in Phillips, the rounding argument... Well, you raise a good point, Judge Moore, but it wasn't waived in this case for two reasons, because we had the inventor testimony saying the standard practice was to carry it out to several decimal points, and the other thing we had, which I think Judge Rakoff's second opinion... Show me exactly where the inventor testified the standard practice is to carry it to several decimal points. It's in their testimony in the appendix. Yes, where? Let me get you those page numbers in just a moment, Your Honor. It might be page 1800. Why don't you take a look there and see if I've got you in the general place. Am I in the right general vicinity? That's certainly one example of the inventor testimony. I guess he's not technically one of the inventors. George Coppola? I believe he was inventor on one patent, but not the other. Yes, not the 574. Okay, so where is the inventor testimony that you're relying on? On 1796 and 1797. Where the value is obtained down at the end of 1796, where the value is obtained using a method of analysis as usual, and it is good practice to put the number of decimal places that corresponds to the precision of the method that we are using that's being used. Now, why doesn't that hurt you, not help you then, right? He says that in this field, you put the number of decimal places to the degree of precision that you're using, and here the claim language has no decimal places. So why isn't he making it clear that that's not a degree of precision to anything but the whole number, so the mathematical rounding concept would apply? If you accept that argument. But I don't see how this testimony helps you. You claim that this testimony supports your position, and I see it going completely against your position. That's what I don't understand. Two points, Your Honor. First, our product, I believe, is 4.695. And what this testimony shows is that one skilled in the art, when he makes a product and measures it and finds it's 4.69, would not round that to 5.0, because it's made with the precision, measured with the precision. It doesn't matter what someone who knows it goes to 4.69 would round it to. It matters whether or not a claim that just says 5 reaches 4.69, right? That's what the question is. The question is, what would someone do with your accused product, but does your accused product fall within this claim limitation? And that's why I come into the court, the January opinion by Judge Rakoff, because what Judge Rakoff said, if I accept the Klubinoff rule in the context of this case, it would mean that the Lupin patents would go down to 4.51, but Stam, which is also described— I think that's a validity argument. How many times do people come up here and argue to us, you're not supposed to be construing it just to maintain its validity. You could have made a separate validity argument after the construction. Well, we could, and obviously that's something we would do if that becomes necessary, but I think what Judge Rakoff was doing is following the court of appeals, saying, do I accept general rounding or not? I've got to do it in the context of my particular case, and in the context of my particular case, it would allow them to do by the back door what they could not do under doctrine of the courts. In other words, what you're saying is essentially that he found a clear and unmistakable disclaimer in the prosecution history. Is that right? I mean, that's the only way he could get really—he didn't say that, but that's the only way he could really get to that conclusion, right? Well, I think he says that in his second opinion, Your Honor, but here's what the situation was in the prosecution history. The claim language in the patents in suit going from 5 to 15 was added to avoid expressly for the purpose of patentability to avoid the STAM reference. Well, there was a lot of discussion after the STAM reference. It had a lot to do with the composition, and does it matter that the language that Judge Rakoff used only showed up in the prosecution history as to the later patents rather than the earlier patents? Well, it's certainly an indication. They added that language to avoid the prior art, to avoid the STAM prior art. And I think Judge Moore correctly cited, which Judge Rakoff did too, that if you apply the Klubinoff rounding rule, let's assume that's a law of mathematics, and no matter what context you've got to do it, then you've got to apply it to STAM also, right? You've got to apply it to STAM also. You've got to apply it to STAM also. It was actually Judge Moore's position. I love to take credit for the smart things she said, but it was her. And then you would have STAM construed as going to 4.49, the Lupin patents going down to 5.51, and there was an express representation in the prosecution history that the claims language has redefined, but the amendment do not apply. You haven't answered my question. That express representation shows up in connection with the 331, not the 574. And that's the later patent, correct? Does that matter? 331 is the later patent. Does the fact that it can have an express representation as it relates to the later patent impact the scope of the earlier patent? They're in the same family. It's the same numerical limitation they're using to distinguish the prior art. We verified, in response to one of your questions earlier, the time sequence. The Markman hearing was held prior to receipt of the expert reports. Do you agree with your friend on the other side that a but language that you relied on in your red brief actually really related to the composition and did not relate to the mass ratio? I believe the only way you can construe it is it does relate to the mass ratio, because they put in- Why don't you show me where you think they use the word of but in connection with the mass ratio, because I can't find it. I only find it in connection with the composition. It's a good word for you, but I don't think it works. Well, in Appendix 1824, STAM neither encompasses nor abuts the claimed invention. That's the claimed invention. And that's in the context of discussing the composition, correct? Not the mass ratio. Which right after the reference also states the phenotype rate represents up to 50% by weight of the composition. Right, the composition. And this is in the context of- I'm sorry, has he finished answering your question? Yeah, I mean that's in the context of the discussion of the concentration, not the mass ratio, is it not? Well, it's in the context of presenting a new claim requiring a mass ratio between 5 to 1 and 15 to 1. New claim 7 on page 1815 of the appendix. So in other claims of the patents, now I realize it's not having to do with the mass ratio, but if you look at claims 21 or 22, there are definitely times when the claim limitations are to the tenth, to the decimal point. But in claim 19, they're not. So why should we limit them in claim 19 when that limitation doesn't appear in the claim language but does appear in other claim language? I'm sorry, in addition to claim 19, you were referring to- Claim 19, 5 to 1 and 15 to 1. That's what we're all talking about here today, right? Exactly, exactly. Okay, but look at claim 21 and 22. I realize it has to do with viscosity, not mass ratio. But we're still talking about basic mathematical principles. In those claims, they use 2.4, 3.6. They go to a tenth. When the inventor wanted to go to a tenth in the claim, he knew how to do it. Why should we read a narrowing level of significance into claim 19 when it's not present there but is present in other claims? Well, I would say just the opposite, Judge Moore. The fact that claim 21 takes it out to an additional decimal point and claim 19 doesn't, I would read that without knowing the secret intent of the draftsman of this, is meaning 5 means 5, period, not some range. If they wanted to put something in a- Right, what do you mean some range? We're talking about the level of significance. Every number has a level of significance, right? Correct. Number 5, whether it's 5.0 to one decimal place, 5.00, 5.000, I mean there's some level of significance that attaches to every single number. Why don't we say that the normal mathematical principles apply if he uses a number that is significant only to the one place, then he gets normal mathematical rounding. If he uses 2.4, well, 2.4 isn't that going to cover, under normal mathematical principles, 2.39, for example? Or are you going to say every number that he uses, everywhere he uses it in his patent is limited to that number and only that number? The normal mathematical rounding principles don't apply. I would say the normal mathematical rounding principles by the precedents of this court in Phillips and in- No, Phillips, the argument was waived. Go back and look. It's not finding precedent on us that favors you. The argument was waived. The court didn't expressly address it. So, I mean, why would we- I'm no mathematician, so why would I throw out and say, nope, for all time and all patents, normal mathematical rounding principles don't apply because one case of ours in Somdikta mentioned something about it after expressly noting that the argument had been waived. I thought Judge Lin was quite precise in U.S. Phillips, where he said it may well be that the integer one standing alone has a broader range than 1.0, but it depends on the context. And that's exactly what Judge Rakoff did, is he looked at the context, or what Lupin is trying to do here is recapture through this rounding technique what it basically gave up in the prosecution history to avoid- Your whole argument hinges on prosecution history. We have to be willing to say, to do what you want, we have to be willing to say the prosecution history here makes it clear that normal mathematical principles, plain meaning, plain language principles don't apply. That requires something akin to a disclaimer, like a clear and unmistakable disclaimer. Do you think that substantially, and you may well think this, but do you think that substantially greater language with regard to SAM is so clear and unmistakable as to tell us that they did not mean, you know, four, five, point, whatever, they really meant a hard five? Is that your position? And, well, it depends on where a hard five is. We certainly don't think a hard five would go down to 4.51, especially when they used- What does it go down to? It certainly doesn't go down to the Klebanoff interpretation with a but, with a stamp. What does it go down to? This is claim construction, so I have to interpret this as a matter of law, so you have to be able to tell me, where does it go down to? I would leave it right at five. You did the hard five. I would give it a hard five. No, whoa, whoa, whoa, whoa, whoa, whoa, whoa, whoa, nothing less. 4.9 to the thousandth is not going to be good enough. There may be some evidence that could come out if it were a close case, but this number of 4.69 is not close to five. Certainly not in the context of this disclaimer of the language. One reading the prosecution history knows that they weren't limited to five. When STAM came up at four, they put in the five limitation at the lower end and said, this distinguishes STAM. Now we do not even abut STAM. This goes back then to my concern here, is that we're talking about summary judgment of non-infringement, and you're arguing claim construction principles. You're arguing disclaimer in the prosecution history. You're even arguing obviousness. This is all sort of mushed all together, and yet what we're talking about is summary judgment of non-infringement, and the only way you can get there is to say that it absolutely can't cover anything as low as, and we have to assume it's 4.7 because that's what the judge assumed for purposes of this case. So what we have to assume is that no rounding principle that could even take you down to there could conceivably apply. That's the only way you can get to a summary judgment of non-infringement. Isn't that right? Well, we certainly, there might be situations where it could be a 4.99 or something like that where you might say that's close enough in this context, but when you're down to 4.69, what Judge Rakoff said is he was using 4.7, and for his purposes, it was really academic whether it was 4.69 or not. Seems to me a large part of your argument involved the question, the use of the language between two numbers. Am I right about that? That's right, and Phillips teaches us that if you've got a between language, it means between point A and point B, and that point A and point B, as a general rule, should not be ranges themselves, and that's what Phillips, U.S. Phillips taught us. Now, something I don't understand, because it's not in the appendix, and I should have pulled it off, Paul, but I didn't. Was, you suggested that 5 was added to overcome STAM. Is that technically correct? They clearly made an argument about 5, and it explains the examiner why it overcame STAM, but at least in that office action series, I didn't see this limitation being added in true Festo style. I saw it more as an argument, but unfortunately, we don't have the whole prosecution history. So was the 5 number, 5 to 1 ratio, actually inserted? Was there no numerical range originally, and then did the examiner reject it on the basis of STAM, and did they then add the limitation and argue that it was added for that purpose? I just want to be clear, because it's not in the appendix. I can't find it. Yes, Your Honor, it's in the appendix 1815. The mass ratio is in... 1815. 1815 is in Claim 7. Yeah, but okay, so it was there beforehand. They didn't add this limitation to overcome STAM. This limitation was already present. They just argued that the existence of it overcame STAM, right? I mean, look, there's amendments in prosecution, and there's arguments in prosecution, and I'm not saying they have to be treated differently. I just want to precisely understand the prosecution history. As I understand Claim 7, it was added at a point before this amendment, and then they the argument that that claim language in Claim 7 meant that they no longer abutted STAM. Once again, I'm probably being imprecise, and maybe you don't know the answer, and that's fine, but was this language added to overcome STAM, or was it already present and they simply pointed to it? Because the difference actually does matter to me. Well, first, I would argue that it doesn't matter, but it's my understanding this was added at a point after the original filing. But at a point facing the rejection. Was it added? Look, we may not have overcome STAM before, but we do now because we're adding this limitation in order to overcome it. I'm just trying to understand the language. We don't have the whole prosecution history here, which I hate. I can't stand it when you guys have a one patent case, which really this is, and you don't give me the whole prosecution history. You didn't do what some people do. They give me an office section with a quote that they say is important that trails onto the next page, which isn't in the appendix. You didn't do that. I think your Honor raises a legitimate question, and what we would like to do is... I'll pull it off, Paul. I'll pull it off, Paul. I'd be happy to submit it if that would help you. You don't have to, unless it's secret and I can't get it. I have no reason to believe it's secret. Before you sit down, let me ask you a question. The way that trial court distinguished the San Juan case, I guess, is that the ITC case. This notion of that somehow our court adopted a rule that you have to prove that use of a mathematical principle such as rounding is an industry standard before you can resort to it. I don't read that in that case. They simply said that the ITC regularly rounds. So how do we get this industry standard requirement that the trial court imported into its opinion? I don't think you're... First, we believe it was the standard within this industry according to the inventor's testimony. But over and above that, your Honor, whether it was industry standard or not, Judge Rakoff in addition said that this would enable them to recapture what they had given up and would be inconsistent. Yeah, he said that though, but he never actually made a specific finding in the claim construction context of a clear and unmistakable disclaimer, did he? You're saying that in the second opinion where he's withdrawing the preliminary injunction or the temporary injunction that he put in place, that you're saying that there he made a disclaimer finding? I don't know that he used the word disclaimer, but he went through that exercise to see what the prior art covered, what arguments they made to distinguish the prior art. He then said, here's what would happen if you applied Dr. Klibanoff's rule to both the patents in suit and to the stamp reference, then their representation that the new claim language would not let the two stand in movement, a but would no longer be in effect. Well, let's put aside the word of but because I think you're bringing that from the wrong part of the prosecution history and putting it somewhere else. But your colleague on the other side argued that it is important that even if they come close, they don't actually overlap. And they argue moreover that if you actually really look at the stamp, there's nothing in stamp that actually goes above two. So that even though there's a range that all the teachings of stamp, and we don't actually have a whole analysis of this in an obviousness type context, but all the teachings of stamp would actually show that the range is actually the meaningful range or what's being disclosed is actually something less. Well, if we're going to look to ranges disclosed, let's look at the range disclosed in the patents in suit. Lowest one is 5.71. You mean in the example? That's correct, Your Honor. All right. Well, and that's a good claim construction argument. I give you that. But again, we're not in a claim construction context and that's what's bothering me. Yeah. Well, I think the answer to that is whether you're in a claim construction context or not, if we're going to allow the mathematical rounding, the grade school rounding, as Mr. Green puts it. We've got to make sure we're not doing something that's inconsistent with the disclosures of the patents and inconsistent with representations. Let me ask you something about this disclaimer point, if Judge Post would indulge me for one second. On 1849, when it talks about the claimed invention having a ratio which is substantially greater than stamp, because we're hanging a lot on that substantially greater language, you do, and we are too in our questioning, right? Are you with me? I am. Okay. So when you're talking about a range of 1 to 10 and 4 to 1, and then a range of 5 to 1 all the way up to 15 to 1, well, certainly we'd all agree 1 to 10 and 15 to 1, wow, they are substantially greater, right? I mean, does the entire range have to be substantially greater? Can't you have two ranges that abut each other? But since the range is so large, the second range really is substantially greater than the first range, because it goes so much further beyond the first range. I guess I'm wondering if this language is absolutely as clear and unmistakable as to carry the whole case, because I feel like this language has to carry the whole case for you to win me over. And so that's what I'm worried about, is does it? Is this language so clear and unmistakable that it amounts to a disclaimer? Well, we believe when you are making a distinction of patentability based on numerical range, you shouldn't be allowed to recapture what you have argued distinguishes you from the prior art. And that's exactly what Judge Rakoff emphasized in his first and more so in his second opinion. And I would say it is unmistakable that they said, sure, we're facing STAM. STAM is prior art. STAM is 4.1. We're now at 5.1. We do not abut STAM. You don't mean 5.1. You mean 5 to 1. I apologize. 5 to 1. Excuse me. That's good. Thank you. Thank you very much. Let me first address the San Juan case. And I certainly agree with Judge O'Malley on this point. The court never found industry practice what it was referring to as the ITCs rounding. I think that case by itself is quite telling because specifically this court in addressing what the ITC did in that case addressed the issue of rounding because that's what happened. The numbers in the range that was claimed in the San Juan case went from 30 to 36. The information provided to the ITC showed ranges above that, up to 36.31 and 36.45. And as this court pointed out, San Juan argues that rounding cannot be used to expand the scope of the claims. The court goes on to recognize that there was no error in that situation to recognize these limits of accuracy and to round to the measured weight percentages to the nearest integer because that's the way the claims read. There's no argument that, and it was recognized that you could measure more accurately than that. You could measure to the nearest tenth or hundredth perhaps. But the claimed range wasn't to that level of specificity. It was to an integer, in this case, 30 to 36 for the range with no decimal point. And this court found that the ITC acted properly in finding infringement in that case. With respect to how close can you be and still be patentable, again, I want to point back to this case, where this case, this court addressing a range of 0.91 and due to the argument used during prosecution, then held that range to be 0.910. But there was an about there and as this court recognized, the prior art that was taught went to 0.912. And this court said, we need not decide what range is reasonably encompassed by about in 0.910. In all instances, it can't reach films having a density of 0.912. So in that instance, we're taking a patent claim to 0.910 with an about and the closest prior art is 0.912. So it is not at all an unusual situation for this court to deal with patents that have been issued and are deemed patentable when there's a minute difference from the prior art, when there's no motivation to move that way and there's no teaching whatsoever to undertake that. Was there a DOE claim in this case? There is not. And why is that? Because the issue of rounding, in our view, was clear and unmistakable. And there was no need to muddy the water with an issue of doctrine of equivalence in this context. And let me perhaps then last address the issue of the alleged abut language. Again, I agree with Judge O'Malley on this point. If you read A1823 through A1824 dealing with the abut language here, and it's quite clear if you start at page 1823 that what was being discussed in this part of the office action were two things. The 20 to 50 percent by weight composition of phenol fibrate and wherein the hydrophilic polymer sybilizing agent was at least 20 percent. If you go on to the language that's quoted, it deals with those ranges. It refers back to those ranges. So to me, it's unequivocal. This has nothing to do with the 5 to 1 to 50 to 1 range. And I see that my red light's on. Thank you very much. We thank both parties and the cases submitted. All rise. The Honorable Court is adjourned from day to day.